[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The plaintiff and the defendant, whose maiden name was Rathbun, intermarried at North Stonington, Connecticut on May 29, 1994; that the plaintiff has resided continuously in
Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are no minor children issue of the marriage; that there were no minor children born to the defendant since the date of the marriage of the parties; that the marriage has broken down irretrievably; that there is no hope of reconciliation and that no state agency is presently contributing to the care or welfare of the parties.
When the defendant was 12 years of age she began to babysit for the plaintiff's children of his then marriage. The relationship changed when defendant, then 14 years of age, began a sexual relationship with the plaintiff. Plaintiff and his then wife obtained a dissolution of their marriage on November 7, 1991. At age 17 the defendant joined the Navy and CT Page 12965 was stationed in California. The plaintiff visited three times with the defendant before they got married on May 29, 1994.
After the parties married, the plaintiff moved to California to be with the defendant who was stationed in California. After four months or so, the plaintiff returned to Connecticut because of financial concerns although defendant wanted him to remain. He returned two more times to California to visit the defendant.
In San Diego he discovered that the defendant was dating someone else. For this reason and because the marriage was not working, the parties went their separate ways. However, in December 1995 the defendant was discharged from the Navy and returned to Connecticut to get back together with the plaintiff. At that time plaintiff claims that the defendant demanded that title to the marital home be put in her name and that his refusal to do so led to arguments.
Although the relationship was not very good, the defendant stayed with the plaintiff in the marital residence until she moved out during January 2000. She claimed that the plaintiff was dating a co-employee when she left, which claim plaintiff denies. Defendant returned to plaintiff while he was in Florida but on their return to Connecticut, she moved out again.
According to the defendant, plaintiff suffered from alcohol and substance abuse, and was arrested three times for driving under the influence. He also was intoxicated very often and on many occasions while asleep in bed he would void on her causing the defendant to purchase a waterproof mattress for the bed. She also claims that plaintiff was unfaithful to her while she was in the Navy.
Plaintiff claims he paid for all household expenses and that the defendant only paid for her telephone bill. However, defendant testified that she paid for household expenses and food, car gas; that plaintiff worked side jobs for cash, that he was preoccupied with money and wanted to retire by age 45; that she often brought him lunch on his side jobs; that the marital home was finished in late 1999.
All plaintiff's bank accounts were in his name alone. Also much of his savings in cash were kept in a safe in his father's home.
Defendant testified that at plaintiff's request she went to the safe to get $500.00 for plaintiff for a bond in connection with one of his driving under the influence arrests. She testified that the safe contained many brown rusty bags filled with money. CT Page 12966
Although the testimony offered is conflicting, it is clear that the marriage of the parties has irretrievably broken down without any hope for reconciliation. However, I find the plaintiff more at fault for the breakdown than the defendant.
The plaintiff, who was born August 8, 1966, appears to be in good health. He is a licensed electrician employed by his father's business. Plaintiff, also during the marriage, has been self-employed doing electrical work for others. According to his financial affidavit his net income from his employment with his father is $563.63. Although plaintiff has rental income from property located at 7 Haley Street, Mystic, Connecticut, he claims the expenses exceed his rental income.
The defendant, who was born August 25, 1975, appears to be in good health. After she was discharged from the Navy, she began employment as a waitress at S.P. Oyster House from December 1995 to October 1996, then as a dealer at Mohegan Sun Casino and returned to S.P. Oyster House as a waitress September 2000 where she is presently employed. She works approximately 35 hours per week. According to her financial affidavit, she has a net weekly income of $329.28.
The defendant has an associates degree from Three Rivers Community College in Early Childhood Education. She wants to continue her education and obtain a bachelor's degree, which she estimates will take two years.
The plaintiff testified that at the time of his marriage to the defendant he had approximately $125,000.00 cash; that prior to his marriage he purchased land located at 398 Porter Pond Road for $43,000.00; that in 1993, he started to build the marital home. By the end of 1995 the first floor and one bedroom were finished. The plaintiff added a porch to the home in 1996 and a two-car garage and second floor were completed in 1998.
Plaintiff claims that he paid about $63,000.00 of his savings to pay for the materials and labor incurred in constructing the marital home and that his father gave him $4,000.00 in 1994 to assist with the construction of the home. According to his financial affidavit, the marital home is mortgage free and has a market value of $122,000.00. On December 11, 1996, before the home was finished, plaintiff valued it at $140,000.00. See Defendant's Exhibit 1.
A comparative market analysis by Anthony Muscente of Bianca Realty, Inc., dated October 13, 2000 states that the marital home would sell for between $119,000.00 and $120,000.00, but cautions that this is not an appraisal but merely his opinion of the marketability of said property. See Plaintiff's Exhibit A. The exhibit does not have a picture of the CT Page 12967 marital home and information as to size, number of rooms, etc., so that a comparison could be made with other properties included in said exhibit.
In 1996 plaintiff purchased a two-family rental property located at 7 Haley Street, Mystic, Connecticut for $112,000.00. Plaintiff made a down payment of $5,000.00 and claims that he paid for all materials and performed most of the labor needed on said rental property.
According to plaintiff's financial affidavit, the present value of said property is $100,000.00 but it is encumbered by a $112,000.00 mortgage. The monthly rental received is $1,475.00 but the monthly mortgage and expenses exceed said income.
According to plaintiff's Exhibit B, using the cost approach, the property is appraised for $122,870.00. It is appraised by the Town of Stonington for $86,010.00 for tax purposes.
Plaintiff's financial affidavit shows total assets, excluding his children's custodial accounts, and ignoring the claims that the Haley Property has a negative equity of $12,000.00, of $241,993.00.
From plaintiff's testimony that he had $125,000.00 cash at the time of his marriage; that the marital home property and construction cost him about $108,000.00 of his savings, it appears that the marital assets of the parties are approximately $134,000.00.
Based on the evidence, judgment is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown. After considering the evidence and the provisions of Connecticut General Statute §§46b-62, 66a, 81 and 82, it is further ordered:
1. The plaintiff shall pay to the defendant $100.00 per week alimony for a period of two years, defendant's remarriage or the death of either party, whichever is the first to occur. Said alimony is non-modifiable as to term. However, in the event of plaintiff's cohabitation with an unrelated male pursuant to C.G.S. § 46b-86b, said alimony may be terminated or modified.
2. The plaintiff shall pay to the defendant as a property settlement the sum of $80,000.00 within 30 days. If not paid within said period, said obligation shall be secured by a mortgage on 398 Porter Pond Road, Sterling, Connecticut with 8% interest and be payable one year from date. If defendant is required to bring legal action to collect said obligation, defendant shall be entitled to attorney's fees and all costs of collection. CT Page 12968
3. The plaintiff shall keep his 1999 Nissan and 2000 Harley Davidson motorcycle free of any claim by the defendant. However, plaintiff shall be responsible for all loans and liens on said vehicles and hold the defendant harmless therefrom.
4. The plaintiff shall keep free of any claim from the defendant the real estate at 398 Porter Pond Road, Sterling, Connecticut and the property at 7 Haley Street, Mystic, Connecticut. The plaintiff shall be solely responsible for all mortgages, liens, taxes, insurances, etc., on said property and he shall hold the defendant harmless from same.
5. The plaintiff shall keep all his bank accounts, household furnishings, stocks and his IRA account.
6. The defendant shall own the 2000 Mitsubishi free of any claim from the plaintiff. She shall be responsible for any loans or liens on said automobile and hold the plaintiff harmless from same.
7. The defendant shall own her Citizen bank account, her personal computer and Merrill Lynch Mainstreet retirement plan and her furniture.
8. If there is any disagreement as to what furniture and/or household furnishings each party is to keep, the court will retain jurisdiction to resolve any conflict.
9. The plaintiff shall pay to the defendant $2,500.00 towards her atiorney fees within 30 days.
JTR Vasington